## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA
## OKLAHOMA CITY DIVISION

| | |
|---|---|
| JACOB RHIEL, Individually and For Others Similarly Situated, | Case No. ___CIV-20-423-J___ |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |
| ASCENT RESOURCES - UTICA, LLC, | CLASS ACTION PURSUANT TO FED. R. CIV. P. 23 |
| Defendant. | |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Jacob Rhiel (Rhiel) brings this lawsuit to recover unpaid overtime wages and other damages from Ascent Resources – Utica, LLC (Ascent) under the Fair Labor Standards Act (FLSA), the Ohio Minimum Fair Wage Standards Act, O.R.C. §§4111 *et seq.*, (the Ohio Wage Act), and the Ohio Prompt Pay Act (OPPA), Ohio Rev. Code §4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Wage Acts").

2.      Rhiel worked for Ascent as an Operator in Ohio.

3.      Rhiel and the Day Rate Workers (as defined below) regularly worked more than 40 hours a week.

4.      But Ascent did not pay them overtime.

5.      Instead of paying overtime as required by the FLSA and the Ohio Wages Acts, Ascent classified Rhiel and other similarly situated workers as independent contractors and paid them a flat amount for each day worked (a "day rate") without overtime compensation.

6.    Ascent never paid Rhiel or the Day Rate Workers a guaranteed salary.

7.    This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

8.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.    The Court also has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

10.   Venue is proper under 28 U.S.C. § 1391(b) because Ascent maintains its headquarters in this District and Division.

11.   Specifically, Ascent maintains its headquarters in Oklahoma City, Oklahoma.

## PARTIES

12.   Rhiel worked for Ascent as an Operator from approximately May 2018 until March 2019.

13.   Rhiel worked for Ascent in Ohio.

14.   From May 2018 until October 2018, Rhiel was paid a flat rate for each day worked regardless of the total hours worked in a day or week with no overtime compensation ("day rate pay plan") and was classified as an independent contractor.

15.   But, Rhiel was Ascent's employee.

16.   Indeed, in October 2018, Ascent reclassified Rhiel as an employee and started paying him on an hourly basis.

17.   Rhiel's consent to be a party plaintiff is attached as Exhibit 1.

18.     Rhiel brings a FLSA collective action on behalf of himself and all other Ascent's workers who were classified as independent contractors and paid according to Ascent's day rate pay plan.

19.     Ascent paid each of these workers a flat amount for each day worked and failed to pay them overtime for hours worked in excess of 40 in a workweek.

20.     The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All workers employed by, or working on behalf of, Ascent who were paid a day rate at any time in the last 3 years (the "FLSA Day Rate Workers").**

21.     Rhiel also seeks class certification of an additional class under Fed. R. Civ. P. 23 under the Ohio Wage Acts as follows:

> **All workers employed by, or working on behalf of, Ascent in Ohio who were paid a day rate at any time in the last 3 years (the "Ohio Day Rate Workers").**

22.     The FLSA Day Rate Workers and the Ohio Day Rate Workers are referred to collectively as the Day Rate Workers.

23.     Ascent may be served with process by serving its registered agent: **Capitol Documents Services, Inc., 1833 South Morgan Road, Oklahoma City, Oklahoma 73128.**

### FLSA COVERAGE

24.     At all relevant times, Ascent has been an employer within the meaning of section 3(d) of the FLSA. 29 U.S.C. § 203(d).

25.     At all relevant times, Ascent has been part of an enterprise within the meaning of section 3(r) of the FLSA. 29 U.S.C. § 203(r).

26.     At all relevant times, Ascent has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

27.     At all relevant times, Ascent has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, smart phones/devices, badges, uniforms, computers, personal protection equipment, etc.) that have been moved in or produced for commerce.

28.     In each of the past 3 years, Ascent's annual gross volume of sales has exceeded $1,000,000 for at least the past 3 years.

29.     At all relevant times, Rhiel and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

30.     Ascent treated Rhiel and the Day Rate Workers as employees and uniformly dictated the pay practices it applied to Rhiel and the Day Rate Workers.

31.     Ascent's misclassification of Rhiel and the Day Rate Workers as independent contractors does not alter their status as an employee for purposes of the FLSA or the Ohio Wage Acts.

## FACTUAL ALLEGATIONS

32.     Ascent bills itself as one of the largest privately held exploration and production companies in the United States and the largest oil and natural gas producer in Ohio.[1]

---

[1] https://ascentresources.com/about (last visited May 6, 2020).

33.     To complete its business objectives, Ascent hires personnel, such as Rhiel, to perform services on its oil and gas ventures.

34.     Ascent does not hire these workers on a project-by-project basis.

35.     Rather, Ascent hires and treats these workers just like regular, even if sometimes short-term, employees.

36.     Many of these individuals worked for Ascent on a day rate basis (without overtime pay).

37.     These workers make up the proposed collective of Day Rate Workers.

38.     While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

39.     For example, Rhiel worked for Ascent as an Operator from approximately May 2018 until March 2019.

40.     From May 2018 until October 2018, Rhiel was paid a flat rate for each day worked regardless of the total hours worked in a day or week with no overtime compensation ("day rate pay plan") and was classified as an independent contractor.

41.     In October 2018, Ascent reclassified Rhiel as an employee and started paying him on an hourly basis.

42.     Rhiel and the Day Rate Workers worked for Ascent under its day rate pay scheme.

43.     Rhiel and the Day Rate Workers did not receive a salary as required to be exempt under the FLSA or the Ohio Wage Acts.

44.     If Rhiel and the Day Rate Workers did not work, they did not get paid.

45.     Rhiel and the Day Rate Workers did not receive overtime pay.

46.     This is despite the fact Rhiel and the Day Rate Workers often worked more than 12 hours a day, for 7 days a week, for weeks at a time.

47.     Although he typically worked 2 days a week, for more than 12 hours a day, Rhiel did not receive any overtime pay.

48.     Rhiel and the Day Rate Workers received the day rate regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

49.     Rhiel's work schedule is typical of the Day Rate Workers.

50.     Ascent knows Rhiel and the Day Rate Workers work for more than 12 hours a day, for 7 days a week.

51.     Ascent's records reflect the fact that Rhiel and the Day Rate Workers regularly work far in excess of 40 hours in certain workweeks.

52.     Ascent does not pay Rhiel or the Day Rate Workers overtime for hours worked in excess of 40 in any of those weeks.

53.     Instead, Ascent pays Rhiel and the Day Rate Workers on a day rate basis.

54.     Rhiel and the Day Rate Workers are not employed on a salary basis.

55.     Rhiel and the Day Rate Workers do not, and have never, received guaranteed weekly compensation from Ascent irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

56.     Ascent's policy of paying Rhiel and the Day Rate Workers a day rate with no overtime compensation violates the FLSA and the Ohio Wage Acts because it deprives Rhiel and the Day Rate Workers of overtime for the hours they work in excess of 40 hours in a single workweek.

57. Ascent knew Rhiel and the Day Rate Workers worked more than 40 hours in a week.

58. Ascent controls Rhiel and the Day Rate Workers' work.

59. Ascent requires Rhiel and the Day Rate Workers to follow Ascent's policies and procedures.

60. Rhiel and the Day Rate Workers' work must adhere to the quality standards put in place by Ascent.

61. Rhiel and the Day Rate Workers are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

62. As an Operator, Rhiel's primary responsibilities included going to wellsites and conducting preventative maintenance in accordance with Ascent's policies and procedures.

63. Without the job performed by Rhiel and the Day Rate Workers, Ascent would not be able to complete its business objectives.

64. Rhiel and the Day Rate Workers relied on Ascent for work and compensation.

65. Rhiel and the Day Rate Workers worked in accordance with the schedule set by Ascent.

66. Rhiel and the Day Rate Workers cannot subcontract out the work they are assigned by Ascent.

67. Rhiel and the Day Rate Workers must follow Ascent's policies and procedures.

68. Rhiel and the Day Rate Workers' work must adhere to the quality standards put in place by Ascent.

69.     Rhiel and the Day Rate Workers did not substantially invest in the tools required to complete the overall job to which they were assigned.

70.     Rhiel and the Day Rate Workers did not possess any specialized or unique skill set.

71.     Rhiel and the Day Rate Workers did not market their services while employed by Ascent.

72.     Rhiel and the Day Rate Workers worked exclusively for Ascent during the relevant period.

73.     Rhiel and the Day Rate Workers did not incur operating expenses like rent, payroll, marketing, and/or insurance.

74.     Ascent set Rhiel and the Day Rate Workers' work schedule, which prohibited them from working other jobs for other companies while working on jobs for Ascent.

75.     At all relevant times, Ascent maintained control, oversight, and direction of Rhiel and the Day Rate Workers, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

76.     Ascent knew Rhiel, and other Day Rate Workers, worked more than 40 hours in a week.

77.     Ascent knew, or showed reckless disregard for whether, the Day Rate Workers were not exempt from the FLSA or the Ohio Wages Acts' overtime provisions.

78.     Nonetheless, Ascent failed to pay Rhiel and the Day Rate Workers overtime.

79.     Ascent knowingly, willfully, or in reckless disregard carried out this illegal day rate pay plan that deprived Rhiel and the Day Rate Workers of overtime compensation in violation of the FLSA and the Ohio Wage Acts.

80.     Ascent's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay these employees overtime made in good faith.

81.     Ascent willfully violated the FLSA and the Ohio Wages Acts.

## CAUSE OF ACTION
## FLSA VIOLATION

82.     Ascent's day rate pay plan violates the FLSA because Rhiel and the other Day Rate Workers did not receive overtime pay for hours they worked in excess of 40 in a week.

83.     Ascent knew, or showed reckless disregard for whether, its day rate pay plan violated the FLSA.

84.     Ascent's failure to pay overtime compensation to the Day Rate Workers was not based on any reasonable interpretation of the law.

85.     Nor was Ascent's decision not to pay its Day Rate Workers overtime made in good faith.

86.     Accordingly, Rhiel and the Day Rate Workers are entitled to recover their unpaid overtime under the FLSA, liquidated damages, attorneys' fees, and costs.

## CAUSE OF ACTION
## OHIO WAGE ACT VIOLATIONS

87.     Rhiel brings his claim under the Ohio Wages Acts as a Rule 23 class action.

88.     The conduct alleged violates the Ohio Wages Acts.

89.     At all relevant times, Ascent was subject to the requirements of the Ohio Wages Acts.

90.     At all relevant times, Ascent employed Rhiel and the Ohio Day Rate Workers as "employees" within the meaning of the Ohio Wage Acts.

91.     The Ohio Wage Acts requires employers like Ascent to pay employees at 1.5 times their regular rate of pay for hours worked in excess of 40 in any week.

92.     Rhiel and the Ohio Day Rate Workers are entitled to overtime under the Ohio Wage Acts.

93.     Ascent has and has had a policy and practice (its day rate pay plan) that failed to pay Rhiel and the Ohio Day Rate Workers overtime for hours worked in excess of 40 in a workweek.

94.     Rhiel and the Ohio Day Rate Workers seek unpaid overtime in amount equal to 1.5 times their regular rates of pay for work performed in excess of 40 in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

95.     Rhiel and the Ohio Day Rate Workers also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Ascent, as provided by the Ohio Wage Acts.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

96.     Rhiel brings this claim as a class and collective action under the FLSA and Ohio Wage Acts.

97.     The Day Rate Workers were victimized by Ascent's day rate pay plan which is in willful violation of the FLSA and Ohio Wage Acts.

98.     Other Day Rate Workers worked with Rhiel and indicated they were paid in the same manner (a day rate with no overtime) and performed similar work.

99.     Based on her experiences with Ascent, Rhiel is aware that Ascent's illegal day rate pay plan was imposed on the Day Rate Workers.

100.    The Day Rate Workers are similarly situated in all relevant respects.

101.    Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

102.    The illegal day rate pay plan Ascent imposed on Rhiel was imposed on all Day Rate Workers.

103.    Like Rhiel, the other Day Rate Workers are denied overtime when they work more than 40 hours per week.

104.    The overtime owed to Rhiel and the Day Rate Workers will be calculated using the same records and the same formula.

105.    Rhiel's experiences are therefore typical of the experiences of the Day Rate Workers.

106.    The specific job titles or precise job locations of the various members of the Putative Class do not prevent class or collective treatment.

107.    Rhiel has no interest contrary to, or in conflict with, the Day Rate Workers that would prevent class or collective treatment.

108.    Like all Day Rate Workers, Rhiel has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

109.    A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

110.    Absent a class or collective action, many Day Rate Workers will not obtain redress of their injuries, and Ascent will reap the unjust benefits of violating the FLSA and Ohio Wage Acts.

111.    Further, even if some of the Day Rate Workers could afford individual litigation against Ascent, it would be unduly burdensome to the judicial system.

112.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Day Rate Workers, as well as provide judicial consistency.

113.    The questions of law and fact that are common to each Day Rate Worker predominate over any questions affecting solely the individual members.

114.    Among the common questions of law and fact are:

    a.    Whether Ascent was Rhiel and the Day Rate Workers' employer within the meaning of the FLSA and Ohio Wage Acts;

    b.    Whether Ascent's decision to pay a day rate with no overtime compensation to these workers was made in good faith;

    c.    Whether Ascent's violation of the FLSA was willful; and

    d.    Whether Ascent's illegal pay practice applied to the Day Rate Workers.

115.    Rhiel and the Day Rate Workers sustained damages arising out of Ascent's illegal and uniform employment policy.

116.    Rhiel knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class and collective action.

117.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Ascent's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective treatment.

118.    Consistent with Ascent's illegal day rate policy, Rhiel and the Day Rate Workers were not paid overtime when they worked more than 40 hours in a workweek.

119.    As part of their regular business practices, Ascent intentionally, willfully, and repeatedly applied its day rate pay plan to Rhiel and the Day Rate Workers.

120.    Ascent's illegal day rate pay plan deprived Rhiel and the Day Rate Workers of the premium overtime wages they are owed under federal law.

121.    Ascent is aware, or should have been aware, that the FLSA required it to pay Rhiel and the Day Rate Workers overtime premiums for hours worked in excess of 40 in a workweek.

122.    There are many similarly situated Day Rate Workers who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

123.    The other Day Rate Workers are known to Ascent, are readily identifiable, and can be located through Ascent's records.

### JURY DEMAND

Rhiel demands a trial by jury.

### RELIEF SOUGHT

Wherefore, Rhiel prays for:

(a)    an order allowing Rhiel's FLSA claims to proceed as a collective action and directing notice to the other Day Rate Workers pursuant to § 216(b) of the FLSA;

(b)    an order designating the Ohio Class as a class action pursuant to Fed. R. Civ. P. 23;

(c)    an order appointing Rhiel and his counsel as Class Counsel to represent the interests of both the federal and state law classes;

(d)    judgment finding Ascent in violation of the FLSA;

(e)    judgment finding Ascent liable to Rhiel and the Day Rate Workers for unpaid overtime, and an equal amount of liquidated damages;

(f)     judgment awarding Rhiel and the Day Rate Workers reasonable attorneys'
         fees and costs of this action;

(g)     judgment awarding Rhiel and the Day Rate Workers pre- and post-judgment
         interest at the highest rates allowed by law; and

(h)     such other and further relief as may be necessary and appropriate.

                              Respectfully submitted,

                              By: /s/ Michael A. Josephson
                                      **Michael A. Josephson**
                                      Texas Bar No. 24014780
                                      OK Fed. ID 14-145
                                      **Andrew W. Dunlap**
                                      Texas Bar No. 24078444
                                      OK Fed. ID 14-148
                                      **Taylor A. Jones\***
                                      Texas Bar No. 24107823
                              **JOSEPHSON DUNLAP**
                              11 Greenway Plaza, Suite 3050
                              Houston, Texas 77046
                              713-352-1100 – Telephone
                              713-352-3300 – Facsimile
                              mjosephson@mybackwages.com
                              adunlap@mybackwages.com
                              tjones@mybackwages.com
                              *Pro Hac Vice Application Forthcoming*

                              **Richard J. (Rex) Burch**
                              Texas Bar No. 24001807
                              **BRUCKNER BURCH PLLC**
                              8 Greenway Plaza, Suite 1500
                              Houston, Texas 77046
                              713-877-8788 – Telephone
                              713-877-8065 – Facsimile
                              rburch@brucknerburch.com

                              **ATTORNEYS IN CHARGE FOR PLAINTIFF**